By the Court.—Sedgwick, J.
The answer of the defendant corporation admits that it is, and since its organization, has been, engaged in the sale of combs and hairpins, “ and that it has affixed thereto labels similar to those shown in plaintiff’s Exhibit A 1, and. *268 used Exhibits Bl, 0 1 and D 1, for only a short time, and but few of them; but denies that the same were fraudulent imitations of plaintiff’s labels.” This answer was sworn to December 14, 1877. The corporation defendant was- incorporated January 16, 1877. The testimony bearing on the time through which the defendant used the labels, and the admissions of the answer, sufficiently showed such an actual use, and danger or threat of further use., that the plaintiff, if otherwise entitled, would not be deprived of his remedy by injunction, even if the court were satisfied that shortly before the service of summons the defendant had stopped using them.
The labels, Exhibits C1 and D 1, seem to have been those not used by the defendant corporation. The defendant Sonneborn, in his answer, alleges that these - labels were devised and used before, but not after, the incorporation of defendant. His evidence did not clearly show that these labels had not been used after the incorporation, and on the whole case it appeared that the admission of the answer of the defendant corporation was correct. These labels were in undoubted and designed imitation of plaintiff’s labels, Exhibits C and D. The defendants used as their name, which it was not, the words, “ The India Rubber Comb and Jewelry Co.,” and the greatest part of the other details were so nearly like the corresponding details of plaintiffs’ labels that there could be no doubt that defendant’s intention was to represent by their labels that the goods on which they were to be in some fashion placed were goods made by the plaintiff, and in the nature of things it was likely that the intention would be successfully carried out.
With these facts in their minds the defendants proceeded to devise or use for combs the labels, Exhibit A 1, and Exhibit B 1, and made as much of an imitation as the first, excepting the word “India” is left out. *269 The ' right to use their name, as changed into “ The Rubber Comb and Jewelry Co.,” is maintained, on the ground that the defendant, having been incorporated by the latter name, there was a clear legal right to use it upon their goods. Without adverting to an important consideration that they, under the statutes of this State, took and composed that name according to their pleasure, with perhaps a view to the future, which may lead to different rights to those that refer to a name involuntarily bestowed upon a natural person, it is certain that there is some limitation of the usé of a lawful name. If. a right name is used intentionally in a manner that draws attention from a difference between it and another name, so that the effect produced is that of the other name, there is a responsibility for the effect. It is, as to the effect, not the use of the right name. In the present case the way in which the defendants printed their name: “ The Rubber Comb and Jewelry Co.,” viz., upon pieces of paper like those used by the plaintiff, in ink of a like color, and at the top of several colorable imitations of a picture of factory, of description of goods, and of the words, “ warranted not to warp or split, and can be cleaned in warm water,” was likely to draw the attention from the difference of name, and to lead the ordinary reader not to perceive it, but to think that it was plaintiff’s name. The labels themselves, and the testimony in the case, keeping in mind that the labels were made shortly after what was beyond doubt an intentional imitation, prove that the use of defendant’s name on the later ones was intended to produce an impression that it was the plaintiff’s name. A little fact is very significant to show that the defendants had in mind the character of plaintiff’s labels when they made theirs. On plaintiff’s labels was ‘ ‘ warranted not to warp or split, and can be cleaned in warm water.” The defendants, on their first labels, copied this in its very words. On their *270 later, they placed, ‘1 warranted not to warp or split, and can be cleaned in hot water,” It would seem as if the change of'“warm” to “hot” was a preparation of evidence.
In such case it is so easy to give a distinguishing mark that shall have no doubt about it, that it can almost be said that merely the failure to do it shows an actual purpose not to do it. The sum of this part of’ the case is, that the plaintiff proved that the labels of defendant, when placed upon goods, were a representation that the goods were the manufacture of plaintiff. The law gives protection against this. .
Here may be noticed the allegation that plaintiffs had abandoned any exclusive right they may have had by acquiescing in the use of this kind of labels by others, for years. The facts did not sustain the allegation. If there were proof (which was not clear) that there was such a use by others, there was no proof of acquiescence by plaintiffs in it.
As to the sale of goods by the plaintiffs, under the name of the United States Company, the defendants’ requests to the court do not claim that the labels or marks in question were used. I cannot ascertain from the evidence that the defendants attempted to prove it.
Another allegation is that the label of plaintiff should not be protected, because it had on its face the words “Sole manufacturers of Goodyear’s India Rubber and Gutta Percha Combs,” and that this was false and fraudulent to purchasers. Whether it was or was not false was a question of fact. The court could not take judicial cognizance of what Goodyear’s India Rubber and Gutta Percha Combs were. It was possible that a party should be the only manufacturer of such combs, and that, at least a claim to be so was not fraudulent. .• The burden was upon defendant to show the falsity and fraudulent intent, but no testimony as to them was given.
*271 It is also claimed that there was no proof that any one in the market had been, or, by an expert, that any one was likely to be deceived into the belief that goods having defendants’ labels were made by plaintiff. So far as a right to a preventive remedy by injunction is concerned, I do not think that such proof was necessary.
If a court could not judge from a resemblance that it was likely to produce the effect that the original or true one would produce, and which, 1 think, it can, certainly it may infer from a fraudulent intent of a person in circumstances which would permit the consummation of it, that it is likely that the intent will be successful, and others will be deceived.
For these reasons, the judgment against the use of the labels must be sustained, and I proceed to that part against the use of portions' of it.
Whether a name can be a trademark, technically, is doubted by the learned counsel; but I do not understand them to doubt that a defendant may be enjoined from using the plaintiff’s name. The position was not taken, if it be sound ; and as to this, impression is given that what the words of plaintiff’s name really expressed is a kind of trade, and that, as the trade is open to all, the plaintiff can have no exclusive right to words that intelligibly designate the trade. On the facts, I think it was shown that there had been a purpose to use a name in imitation of plaintiff's on a label, and the case made it proper to consider whether there ivas not danger of a use of it apart from the labels. Ho closeness of reasoning, based on the fact that it has never been used by itself, is called for in a case which discloses a meditated general wrong. It does not seem to be material that the name is said, in the pleadings and findings, to be a trademark. The material thing is stopping its use by defendants.
As to the use of the numbers, “2,” “101,” and 1 ‘ 32, ’ ’ *272 I am not able to see that the principles of Gillott v. Esterbrook (48 N. Y. 375), should not be applied. In that case and in this, the numbers were used to distinguish one pattern or character of goods from other patterns. In this case, the defendant’s labels prove that the numbers were useful in the market to designate these patterns. The numbers were selected arbitrarily, and of themselves expressed no size or quality. The findings as to defendants’ knowledge of the plaintiff’s use of the numbers to designate their goods, and of the fraudulent intent as to plaintiffs and third. persons, were substantially the same in the ■ two cases. It was not shown in this case that the plaintiffs had acquiesced in the use of these numbers by others. I am of opinion, however, that the terms of the judgment were too broad in restraining the defendants from using in any way the cut or representation of a factory, on their goods. The plaintiff had never used that as a trademark by itself, in the same sense that the numbers were used. The defendants are still at liberty to use a picture of a factory in a proper manner. The judgment should have been confined to the use of an imitation, colorable or other, of the picture of. a factory, used by plaintiffs. This is, however, hardly more than a matter of form, which could have been corrected upon suggestion, on the settlement of the judgment. The judgment should be modified by striking out the absolute prohibition of the use of a picture of a factory, and confining the imitation to a picture like that used by the plaintiffs.
The case disclosed individual acts by the defendants other than corporation, jointly with the corporation, and there was a joint liability to the plaintiff.
The judgment, after being modified in the manner that has been stated, is affirmed, with costs.
Van Vorst, J., concurred.